Aldine M. MAYS, M.D.

v.

HOSPITAL AUTHORITY OF HENRY COUNTY; James P. Brown; Otis Bellamy; G.R. Foster, Jr., M.D.; A.A. Maliza; Geraldine W. Helton; Robert Engeman; Gene Morris; Russell L. Eaton, individually and as members of The Board of Trustees of the Hospital Authority of Henry County; V. Stephen Cole, individually and as Administrator of Henry General Hospital; Southside Radiological Services, P.C.; Steven Clines, M.D.; Gordon Goldstein, M.D.; Peter Phillips, M.D.; Carlos Ordonez, M.D.; Donald Durrett, M.D.; James Zimmer, M.D.

Civ. No. C 82–2661.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 9, 1984.

John J. Flynt, Jr., Smalley, Cogburn & Flynt, P.C., Griffin, Ga., for plaintiff.

Philip T. Keen, McDonough, Ga., Robert G. Tanner, Long, Weinberg, Ansley & Wheeler, Kevin E. Grady, Alston & Bird, Harvey S. Gray, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on the Plaintiff's motion for a preliminary injunction and on the separate summary judgment motions of two sets of Defendants. The Plaintiff, Aldine M. Mays, Jr., M.D., challenges a contract between the Hospital Authority of Henry County (the Authority) and Southside Radiological Services, P.C. (Southside) that gives Southside exclusive privileges to provide primary radiological services at Henry General Hospital (the hospital).

Henry General is a non-profit hospital in Stockbridge, Georgia owned and operated by the Authority. A board of eight trustees administers hospital affairs. The day-to-day operation of the hospital is handled by an administrator. Southside is a professional corporation of six member radiologists. The Authority, the trustees, the hospital administrator, Southside, and Southside's members are Defendants in this action. The trustees, the hospital administrator, and Southside's members are sued in their official and individual capacities. For convenience, the Authority, the trustees, and the hospital administrator will be referred to as the hospital. Southside and its members will be jointly referred to as Southside.

Dr. Mays is a member of the hospital's medical staff. From the opening of the hospital in 1979 until September 1981, he had an exclusive contract to provide primary radiological services to hospital pa-

tients. Dr. Mays billed patients directly for his services and the hospital sent patients a separate bill for technical services. In the summer of 1981, the hospital offered Dr. Mays a new contract. To reduce the Radiology Department's operating loss, the hospital proposed to bill patients directly for professional and technical services and to remit 30% of net revenues to Dr. Mays. Dr. Mays refused to accept this arrangement, so the hospital sought another contract radiologist. Southside accepted the contract rejected by Dr. Mays, with the addition of a guaranteed minimum monthly payment from the hospital of $13,750.

Since the termination of his contract, Dr. Mays has been president and sole shareholder of Henry Radiology Associates, P.C. (Henry Radiology). Henry Radiology, located across the road from the hospital, provides out-patient radiological services and family medical services. Dr. Mays performs radiological services at other area hospitals and has privileges to perform second readings of radiological procedures at Henry General, when requested by hospital patients. At Henry General, patients are billed by the hospital for a first reading by the contract radiologist and pay an additional fee directly to the physician who performs a second reading. Dr. Mays also enjoys family medicine privileges at Henry General.

Dr. Mays' complaint charges that the hospital's refusal to allow him to provide primary radiological services to hospital patients is a denial of due process and equal protection; that the Defendants conspired to defame his personal and professional reputation and, in fact, defamed his reputation to patients, physicians, and insurance carriers by publicizing the hospital's refusal to let him provide primary radiological services; that the Defendants have violated and have conspired to violate the Health Insurance for the Aged Act, 42 U.S.C. § 1395a, which allows medicare patients to obtain services from any qualified health care provider; and that the exclusive contract between the hospital and Southside is an illegal tying arrangement, a conspiracy in restraint of trade, and an illegal restraint of trade. He requests declaratory and injunctive relief, actual and treble damages, costs, and attorneys' fees. Pending trial, he asks that the Defendants be enjoined from enforcing Southside's exclusive contract. Southside and the hospital have filed separate motions for summary judgment.

For the reasons below, the court denies Dr. Mays' motion for a preliminary injunction, grants in part the Defendants' motion for summary judgment, defers a ruling on the remainder of the Defendants' motions, and orders that the parties show cause why this action should not be stayed pending the Supreme Court's decision of *Jefferson Parish Hospital District No. 2 v. Hyde*, No. 82–1031 (U.S. argued Nov. 2, 1983).

A. Preliminary Injunction

█ Dr. Mays has not sought an evidentiary hearing on his motion for a preliminary injunction, but rather has asked the court to consider discovery materials and depositions on file with the court. Since the issues presented are not factual, but legal, the court has not held an evidentiary hearing.

To be entitled to a preliminary injunction, Dr. Mays must show (1) a substantial likelihood that he will prevail on the merits of his claims; (2) that he will suffer irreparable harm unless the injunction issues; (3) that the threatened injury to him outweighs whatever damage the proposed injunction may cause the hospital and Southside; and (4) that the public interest will not be disserved if the injunction issues. *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983). "[G]ranting a preliminary injunction is the exception rather than the rule. . . . It is an extraordinary and drastic remedy which should not be granted unless the movant has clearly carried the burden of persuasion" as to each of the four prerequisites for relief. *State of Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir.1975).[1] The primary pur-

1. Decisions of the Fifth Circuit handed down

before the close of business on September 30,

pose of this extraordinary remedy is to maintain the status quo pending a decision on the merits. *Cate,* 707 F.2d at 1185; *United States v. Lambert,* 695 F.2d 536, 539 (11th Cir.1983). Dr. Mays asks, however, that the court issue an injunction that would alter, in advance of trial, a contractual arrangement that has persisted between the hospital and Southside for two years. Judged by the four factors listed above, this unorthodox use of the preliminary injunction is inadvisable.

### 1. Likelihood of Success on the Merits

Dr. Mays analogizes his antitrust claims to those presented in *Hyde v. Jefferson Parish Hospital District No. 2,* 686 F.2d 286 (5th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983), and argues that he is likely to succeed on the merits if the court follows *Hyde*'s antitrust analysis. As the court discusses below in reference to the Defendants' motions for summary judgment, *Hyde* was a novel decision in a developing area of the law. Because a Supreme Court decision on the issues presented in *Hyde* is imminent, the court cannot agree that *Hyde* establishes the likelihood of Dr. Mays' success on the merits.

### 2. Irreparable Harm to Dr. Mays

Dr. Mays concedes that monetary injury alone does not justify an injunction, *see Cate,* 707 F.2d at 1189 ("An injury is 'irreparable' only if it cannot be undone through monetary remedies." (citations omitted), but he insists that the threatened destruction of his private clinic, *Federal Leasing, Inc. v. Underwriters at Lloyd's,* 487 F.Supp. 1248, 1266 (D.Md.1980), *aff'd,* 650 F.2d 495 (4th Cir.1981), and the damage to his reputation among his peers and patients, *Interphoto Corporation v. Minolta Corporation,* 417 F.2d 621, 622 (2d Cir. 1969) (per curiam); *Brennan Petroleum Products, Inc. v. Pasco Petroleum Company, Inc.,* 373 F.Supp. 1312, 1316 (D.Ariz.

1981 are binding precedent in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th

1974), make an injunction appropriate. Professors Wright and Miller support this position that injury to reputation and good will and threats to the existence of a business may justify a preliminary injunction. 11 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2948 & nn. 37–38 (1973). The flaw in Dr. Mays' argument, though, is that he has not shown that the exclusive contract between the hospital and Southside engenders a lack of confidence in Dr. Mays that threatens his business, reputation, and good will. Conversely, he does not argue, and probably could not credibly argue, that if enforcement of the exclusive contract were enjoined, public confidence in him would be raised and his business would be more prosperous. The effect of the contract on his clinic's success, then, cannot support the issuance of an injunction. If Dr. Mays ultimately prevails and the exclusive contract is set aside, he can be compensated monetarily for his loss of income while he was barred from providing primary radiological services at the hospital. *Compare Sampson v. Murray,* 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 953 n. 68, 39 L.Ed.2d 166 (1974) (Court has held that insufficiency of savings or difficulties in finding other employment would not support finding of irreparable injury).

### 3. Balance of Harms

The court assumes that, if Dr. Mays were not restricted from providing primary radiological services at the hospital, some attending physicians would select him to do the first reading on radiological procedures performed at the hospital. The exclusive contract can be presumed to reduce Dr. Mays' earnings, but there is no evidence that it visits catastrophic harms on . him. He maintains his own general and radiological practice and interprets radiological procedures at Henry General, as a second-opinion consultant, and at other area hospitals. There is no evidence that Dr. Mays' reputation has been adversely affected by

Cir.1981) (en banc).

his loss of the exclusive contract with the hospital.

On the other hand, an injunction against enforcement of the exclusive contract between the hospital and Southside would interfere with Southside's assured minimum monthly income from the hospital. It would abort a scheme by which the hospital has successfully reduced the Radiology Department's operating loss. The hospital has offered evidence that, since the current contract with Southside, the Radiology Department's losses have been reduced from $317,492 to around $88,000.

Dr. Mays counters that the injury to the Defendants if an injunction issues will not be significant because Southside will not be prevented from performing radiological services and may continue to get substantial business under an injunction. The hospital contends that any change in the provision of radiological services would be time-consuming, inefficient, and would hamper its ability to provide quality health care. The court is persuaded that the efficiency and the economy of the Radiology Department, should the injunction issue, are uncertain. The income loss to Southside is evident.

The court finds that the harm the Defendants would suffer from the issuance of an injunction is more substantial than the loss of earnings Dr. Mays suffers without one.

#### 4. The Public Interest

Dr. Mays argues that the exclusive contract is detrimental to the public interest because patients are not free to choose their radiologist and the absence of competition lowers the quality and increases the costs of patient care. The hospital and Southside point out that Dr. Mays has offered no evidence to show these alleged detrimental effects of the exclusive contract. The hospital has offered evidence that patients are paying essentially the same under the current contract as they were paying when Dr. Mays held the contract for provision of radiological services. In the absence of evidence, the court gives

no weight to Dr. Mays' allegations. The court observes that the exclusive contract has brought the Radiology Department closer to solvency, and in that sense, serves the public interest.

Because none of these four factors support the issuance of a preliminary injunction against the enforcement of the exclusive contract between the hospital and Southside, the court denies Dr. Mays' motion.

### B. Summary Judgment Motions

■ The hospital argues that it is entitled to summary judgment on Dr. Mays' equal protection and due process claims. Both the hospital and Southside ask for summary judgment on Dr. Mays' antitrust and defamation claims, as well as his claims under the Health Insurance for the Aged Act (the Act). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Having examined the evidence in the record, the court grants the Defendants summary judgment on all but Dr. Mays' antitrust claims, for the reasons discussed below.

#### 1. Equal Protection

As a public body created by the Henry County Board of Commissioners, the hospital does not dispute that it is subject to the Fourteenth Amendment. It claims that it arranged an exclusive contract for radiological services in order to reduce the operating losses of the Radiology Department. This exclusive arrangement is presumed to be constitutionally valid and must only be "rationally related to a legitimate state interest" to satisfy the requirements of the equal protection clause. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). Dr. Mays counters that Southside's exclusive privilege to provide primary radiological services at the hospital removes incentives for Southside to improve its practice and

reduces the employment opportunities for radiologists in Henry County. On balance, Dr. Mays believes that these detrimental effects of the contract outweigh the benefits claimed by the hospital. The court is not empowered, however, to judge the wisdom or desirability of a policy determination that neither affects fundamental rights nor proceeds along suspect lines. *Dukes*, 427 U.S. at 303, 96 S.Ct. at 2516. The hospital has a legitimate interest in its financial wellbeing, and the exclusive contract that permits it to recoup more revenues from the operation of the Radiology Department is rationally related to that interest. Any mode of operating the Radiology Department could be expected to have adverse effect on some parties. The Constitution does not authorize the court to invalidate the mode the hospital has chosen, simply because it may have some undesirable repercussions.

## 2. Due Process

■ Essential to a claim of denial of due process is the infringement of a property or liberty interest. Dr. Mays' medical staff privileges at Henry General are intact. He may give second readings of radiological procedures and may provide general medical services. The only restriction imposed by the hospital is that he may not provide primary radiological services. To have a property interest in providing primary radiological services, Dr. Mays must have "a legitimate claim of entitlement," supported, for example, by contract or state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1971). Needless to say, Dr. Mays has no contract with the hospital giving rise to a property interest in the provision of primary radiological services. Nor does state law afford Dr. Mays such a property interest. A physician does not have "absolute authority to practice medicine in the hospitals of this State." *Dunbar v. Hospital Authority*, 227 Ga. 534, 540, 182 S.E.2d 89 (1971). A hospital authority may restrict staff privileges by reasonable, non-discriminatory rules and regulations. *Id.* Likewise, a hospital authority has wide discre-

tion to administer its facilities and to regulate the activities of its staff in order to promote optimal patient care and to assure the hospital's financial wellbeing. The exclusive contract between Henry General and Southside is an exercise of that discretion, with the necessary consequence that the scope of other radiologists' staff privileges is contracted. Because staff privileges may be validly restricted, however, Dr. Mays cannot show a liberty interest in the provision of primary radiological services at Henry General. Since Dr. Mays cannot establish a protectible property or liberty interest, his due process claim must fail.

## 3. The Health Insurance for the Aged Act

The relevant provision of the Act is: Any individual entitled to insurance benefits under this subchapter may obtain health services from any ... person qualified to participate under this subchapter if such ... person undertakes to provide him such services.

■ The Defendants argue that this provision does not expressly afford physicians a right of action against hospitals that deny them the opportunity to provide services to Medicare patients. Furthermore, they urge that no right of action should be inferred because the purpose of the Act is to insure adequate medical care for Medicare patients, not to grant physicians a right to sue health care institutions. The court agrees that Dr. Mays does not have an express right of action. In deciding that a right of action may be inferred from a statute, a court must determine that the plaintiff belongs to the class for whose special benefit the statute was enacted, that Congress intended to create a remedy for the plaintiff, that it is consistent with the legislative scheme to infer such a remedy, and that an inferred federal right of action does not intrude into an area traditionally relegated to state law. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). The question of congressional intent, though, is the ultimate one to be answered. *Touche Ross & Co. v.*

*Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979); *Alabama Federal Savings and Loan Association v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 680 F.2d 1384, 1386 (11th Cir.1982) (per curiam). If Congress did not intend to afford a right of action, none can be inferred. The court need look no further than the Act's initial provision to decide that Congress did not intend to affect the relations between physicians and health care institutions. 42 U.S.C. § 1395 (West 1983) provides:

> Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person.

Because Congress' purpose was to protect Medicare patients, not attending physicians, the court refuses to recognize an implied right of action in favor of physicians. *Accord Home Health Services v. Currie,* 531 F.Supp. 476 (D.S.C.1982), *aff'd,* 706 F.2d 497 (4th Cir.1983) (per curiam). Dr. Mays' claim under the Act must, accordingly, be dismissed.

### 4. Defamation

■ Dr. Mays alleges that, from June 5, 1981 until the day his complaint was filed, November 24, 1982, the Defendants defamed and conspired to defame his personal and professional reputation. He alleges that they accomplished this by denying him the usual staff privileges in the radiology department; publishing their denial; and informing patients, physicians, and insurers that he could render only second opinions and could be paid only for second opinions. Dr. Mays' defamation claims are governed by O.C.G.A. §§ 51–5–1 (written defamation or libel), 51–5–3 (publication of libel), 51–5–4 (oral defamation or slander), and 51–5–5 (malice in defamation), and by the one-year limitations period set out at O.C.G.A. § 9–3–33.

The evidence shows that Dr. Mays has the same medical and radiologist staff privileges as any other non-contract radiologist, and the Defendants have not published any statements to the contrary. Dr. Mays refers in particular to documents that are exhibits to the depositions of the hospital administrator and the president of Southside, and exhibits to his complaint. Most of these documents either make no mention of Dr. Mays or are innocuous in content. Many predate the one-year limitations period, but even if the Defendants had made them public within the limitations period, they would not be libelous. A few documents refer to double readings and double billings of radiological procedures after Southside began performing these procedures automatically and some attending physicians continued to consult Dr. Mays. A letter from the president of Southside to the hospital trustees describes that as "eminently unfair." A letter from the hospital administrator to the medical staff calls the "duplication of services" and "double billing" a "serious problem." Nowhere, however, is Dr. Mays' competence or integrity impugned. None of the statements made is false. The only communication to insurers in the record is a letter from the county administrator, who is not a Defendant. There is no evidence of communications to patients or to the public. In response to Southside's interrogatories, Dr. Mays quoted a newspaper story reporting the statement of the hospital administrator on the change in the contract radiologist, but the newspaper article is not in evidence and appears to predate the limitations period. There is no evidence of oral defamation of Dr. Mays by the Defendants. The court finds that Dr. Mays has not been the victim of defamation and grants the Defendants summary judgment on this claim.

### 5. Antitrust Claim

■ Dr. Mays contends that the hospital's exclusive contract with Southside is an illegal tying arrangement because all hospi-

tal patients must use Southside's interpretive services if they use the hospital's technical services. Dr. Mays argues that the contract is a *per se* antitrust violation, and alternatively that it is also illegal under rule of reason analysis. He relies for support on the antitrust analysis in *Hyde*. The Supreme Court granted certiorari in *Hyde* and heard argument on the case last November. The question presented in the certiorari petition was whether an arrangement by which a hospital secures the exclusive services of anesthesiologists to attend its patients is unlawful *per se* under the Sherman Act because it ties the patients' use of the hospital's operating room to use of the hospital's anesthesiologists. —— U.S. ——, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). The court expects the Supreme Court's disposition of *Hyde* to provide definitive guidance on the antitrust questions raised in this suit, and is therefore inclined to stay action on Dr. Mays' antitrust claims pending a Supreme Court decision in *Hyde*. Accordingly, the parties shall have twenty days from entry of this Order to file briefs addressing why consideration of Dr. Mays' antitrust claims should not be stayed pending a Supreme Court decision in *Hyde*.

CONCLUSION

For these reasons, the court DENIES Dr. Mays' motion for a preliminary injunction. The court GRANTS summary judgment for the Defendants on Dr. Mays' equal protection, due process, and defamation claims, and his claim under the Health Insurance for the Aged Act, 42 U.S.C. § 1395a. The court ORDERS the parties to file briefs, within twenty days of entry of this Order, on the question why consideration of Dr. Mays' antitrust claims should not be stayed pending a Supreme Court decision in *Jefferson Parish Hospital District No. 2 v. Hyde,* No. 82–1031 (U.S. argued Nov. 2, 1983).