CENTURY OIL TOOL, INC. and Jerry Raggio, Plaintiffs-Appellants,

v.

PRODUCTION SPECIALTIES, INC., Gerald Hebert and Gas Lift Supply, Inc., Defendants-Appellees.

No. 82–4514.

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1984.

Guy E. Matthews, Houston, Tex., for plaintiffs-appellants.

Bean & Rush, Ernest L. Parker, Lafayette, La., for Production Specialties and Hebert.

Before REAVLEY, RANDALL and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In a private treble damage suit asserting only a violation of Section 1 of the Sherman Act, the district court isolated for trial the question of whether two corporations under common ownership and control were a "single entity" or sufficiently independent to furnish the required plurality of actors. The jury was charged to consider enumerated signals of independence and found that the two companies were independent. Judgment n.o.v. was granted and this appeal followed. After oral argument we withheld our decision until the Supreme Court's decision in *Copperweld Corp. v. Independence Tube Corp.*, — U.S. —, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Persuaded that this case is controlled by its conclusion that a corporate parent and its wholly owned corporate subsidiary are a single entity under the eye of Section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq., we affirm.

In *Copperweld* the Court disavowed *Kiefer-Stewart Co. v. Joseph F. Seagram & Sons, Inc.*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), which rejected an argument that "[defendant's] status as 'mere instrumentalities of a single manufacturing-merchandizing unit' makes it impossible for them to have conspired in a manner forbidden by the Sherman Act." *Id.* at 215, 71 S.Ct. at 261, *quoted at* — U.S. at —, 104 S.Ct. at 2738. The *Copperweld* Court took the view that an agreement between a parent and its wholly owned subsidiary does not represent a new combi-

nation or joinder of formerly distinct competitive units, rather:

> ... a parent and a wholly owned subsidiary *always* have a "unity of purpose or a common design." They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment of the subsidiary fails to act in the parent's best interests.

—— U.S. at ——, 104 S.Ct. at 2742 (emphasis in original). The *Copperweld* Court criticized the intra-enterprise doctrine as one which looked "to the form of an enterprise's structure and ignores the reality." —— U.S. at ——, 104 S.Ct. at 2743. Looking to substance the Court was persuaded that the "logic" of the congressionally drawn distinction between concerted and unilateral conduct dictates the conclusion that a parent and its wholly owned corporate subsidiary are not distinct economic units within the meaning of Section 1 of the Sherman Act. —— U.S. at —— – ——, 104 S.Ct. at 2743–2745.

## II

Century Oil sued Production Specialties, Inc. and Gas Lift Supply, Inc. under the Clayton Act for violations of Section 1 of the Sherman Act arising out of an alleged breach of an agency agreement between Production Specialties and Century Oil. The relevant facts are undisputed. Production Specialties and Gas Lift were separately incorporated and commonly owned by three men, two of whom owned 30 percent of each corporation and one of whom owned the remaining 40 percent of each corporation. All three men served as directors and officers of each corporation. One drew his compensation from Production Specialties and the other two drew their compensation from Gas Lift, but the compensation of each was based on his percentage of ownership of both corporations.

Both corporations were under the common ownership and control of these three men. Gas Lift manufactured most of the products, wireline tools and gas lift valves, and Production Specialties made most of the retail sales. Both corporations operated from the same physical plant. The dual corporate structure existed because Production Specialties had been wholly owned by one of the men and Gas Lift had been wholly owned by the other two. When the three joined forces they considered but for tax reasons rejected a formal merger of the two corporations.

Given *Copperweld*, we see no relevant difference between a corporation wholly owned by another corporation, two corporations wholly owned by a third corporation or two corporations wholly owned by three persons who together manage all affairs of the two corporations. A contract between them does not join formerly distinct economic units. In reality, they have always had "a unity of purpose or a common design."[1] —— U.S. at ——, 104 S.Ct. at 2742 *quoting American Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1948).

AFFIRMED.

---

1. We address only the question of the independence of two corporations under common ownership. The point at which the ownership of two or more corporations so loses its commonality as to furnish a plurality of actors and thereby trigger the scrutiny of Section 1 of the Sherman Act is not before us.