Merrimack
No. 85-425

KENNETH E. CURRAN, INC.

v.

AUCLAIR TRANSPORTATION, INC. & a.

December 5, 1986

*Law Offices of Alexander J. Kalinski*, of Manchester (*Alexander J. Kalinski* on the brief and *Daniel J. Kalinski* on the reply brief, and *Alexander J. Kalinski* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Edward A. Haffer* on the brief and orally), for Auclair Transportation, Inc. and Granite State Distributors, Inc.

*Stephen E. Merrill*, attorney general (*James A. Sweeney*, assistant attorney general, on the brief, and *Daniel Mullen*, assistant attorney general, orally), for the State.

PER CURIAM. The plaintiff has brought this appeal from the decision in two consolidated suits challenging the practices of the State and two bidders who responded to requests for proposals to provide transportation services for the liquor commission. In the first suit, begun in 1980 and described in a prior appeal, *Kenneth E. Curran, Inc. v. Auclair Transp., Inc.*, 121 N.H. 451, 431 A.2d 124 (1981), the plaintiff seeks equitable relief against Auclair Transportation, Inc., and Granite State Distributors, Inc., to redress a violation of the State anti-trust statute, RSA 356:2, II(e), allegedly committed when each of the two corporations submitted a bid to provide liquor transportation from 1980 to 1982. In the second suit, also begun in 1980, against the State and the same two corporate defendants, the plaintiff alleges both a further violation of the statute by the two corporations and an abuse of discretion by the State in considering the bids; the plaintiff seeks to enjoin the performance of the ensuing contract between the State and Granite State, which originally provided for the transportation of liquor from 1980 to 1982, and which was later extended to cover a period ending in 1985. In 1985, the plaintiff moved to amend the pleadings in the second suit in order to challenge the legality of the contract extensions and to seek damages in addition to equitable relief. The Superior Court (*DiClerico*, J., acting on the recommendation of a Master, *Robert A. Carignan*, Esq.) denied the motion to amend and ordered summary judgment for the private defendants in each suit and for the State in the second. We affirm.

At all relevant times, Auclair was a trucking company wholly owned by Alfred L. Sicotte. Although the record is not entirely clear about the ownership of the second defendant trucker, Granite State was wholly owned either by Sicotte or by a third corporation, which Sicotte wholly owned. Auclair was unionized; Granite State was not. In the spring of 1980, Auclair and Granite State each submitted a bid to the State to provide liquor transportation, *see Kenneth E. Curran, Inc. v. Auclair Transp., Inc., supra* at 452, 431 A.2d at 125; Granite State's lower bid reflected its lower labor costs. Although the State rejected all bids, *id.* at 453, 431 A.2d at 125, the plaintiff brought suit charging that the bids from the sister corporations

Auclair and Granite State reflected an unlawful conspiracy or combination having the purpose or effect of "submitting sham or complementary bids," in violation of RSA 356:2, II(e). This court upheld the trial court's dismissal of the suit as against the commission and its denial of motions to dismiss the suit as against the corporate defendants. *Id.* at 454, 431 A.2d at 126.

In the meantime, the State had put the liquor transportation contract out for bid again. The new request for proposals set a deadline of 2:00 p.m., May 9, 1980, for the submission of bids to a designated State office and reserved the "right to waive any informality" in the bids submitted.

Shortly before 2:00 p.m. on May 9, Donald Sweeney arrived at the office designated, carrying separate bids from Auclair and Granite State. The director of purchase and property, Richard Peale, directed Mr. Sweeney to the room where bids would be opened, and he waited there until approximately 2:00 p.m., when Mr. Peale entered with the purchasing officer, Francis Gardner. Mr. Gardner announced that bidding was closed and stated that he had two bids that had been time-stamped before 2:00 p.m. From his briefcase, Mr. Sweeney removed two sealed envelopes, and stated that he had two bids to deliver. Mr. Peale told Mr. Gardner to accept the bids from Mr. Sweeney, because he had arrived before 2:00 p.m. Mr. Gardner did so. Ultimately the State officials decided that Granite State was the lowest responsible bidder and accepted its bid.

The plaintiff then filed the second suit, seeking to enjoin performance of the contract with Granite State. The pleadings alleged that the State had acted both arbitrarily and illegally in awarding the contract, and further alleged specific illegality in the acceptance of a late bid, and in the acceptance of a bid submitted in violation of RSA 356:2 (illegal contracts, combinations and conspiracies), and :3 (prohibited monopolies).

Auclair and Granite State filed both an answer and a motion to dismiss each suit, and the State moved to dismiss the second. In 1981 Granite State and Auclair answered interrogatories, which apparently comprised the total discovery in both cases. In 1983 Auclair and Granite State filed motions for summary judgment in each suit, and the State did the same in the second. In 1984 Auclair and Granite State moved to dismiss each suit because of the plaintiff's failure to prosecute, and they moved to dismiss the first suit for mootness. The superior court denied all motions.

Nothing further happened for approximately nine months, until the defendants filed new motions for summary judgment in 1985. The plaintiff allegedly learned from these motions that the term of the contract had been extended several times by agreement of the

parties and was due to expire in 1985. It then moved to amend the second suit to charge that the extensions were illegal, and to seek damages in addition to the equitable relief sought originally. In August 1985, the motion to amend was denied and the motions for summary judgment were granted, whereupon the plaintiff brought this appeal.

We will begin by considering the order denying the plaintiff's motion to amend in the second suit. A motion to amend raises an issue subject to the trial court's discretion. *Community Oil Co. v. Welch*, 105 N.H. 320, 323, 199 A.2d 107, 109 (1964) (motion to amend affidavit). While the general rule in this jurisdiction favors such requests, its liberality "applies only if the amendment [would] not change the cause of action or call for substantially different evidence." *V. S. H. Realty, Inc. v. City of Rochester*, 118 N.H. 778, 781, 394 A.2d 317, 319 (1978) (citing *Pearson v. Smith*, 54 N.H. 65 (1873)). The amendment requested here sought to do both.

The plaintiff's petition in the second suit did not attack the clause of the contract that provided for extensions of the contract term by agreement of the parties. The extension clause had nothing to do with the illegality alleged in the commission's acceptance of Granite State's bid, and neither that clause nor the extension fell within the subject of the allegedly illegal agreement between Auclair and Granite State. A decision disposing of the issues raised in the plaintiff's petition would not have reached the claimed illegality that the plaintiff sought to raise in the motion to amend. The challenge to the extension was an entirely new subject of litigation and, therefore, a new cause of action as that term is used in *V. S. H. Realty*. Just as obviously, the new claim would have called for additional evidence in support of the requested damage remedy, which was entirely different from the equitable relief sought in the original pleadings. The trial court was clearly within the bounds of reasonable discretion in refusing to permit the five-year-old pleadings to become the vehicle of such a new action at the eleventh hour. It is unnecessary, therefore, to reach the corporate defendants' argument that a claim for damages was barred by RSA 356:12, II, because the plaintiff had failed to raise it within four years of its accrual.

Because the substantive issues in this appeal are thus limited by the original pleadings, we believe that the defendants are correct in claiming that the cases are entirely moot at this point. Although the plaintiff has questioned whether the record conclusively shows that the term of the contract expired at the end of the last extension, counsel for the State has so represented and the plaintiff does not deny it. If, then, there was a violation of the anti-trust statute or of

the legal standards for competitive bidding, it related only to a contract that has been fully performed. With nothing left to enjoin or to reform, the exercise of equity powers as requested by the plaintiff would be meaningless. *See Littlefield v. N.H. Interscholastic Athletic Ass'n*, 117 N.H. 183, 185, 370 A.2d 645, 646 (1977).

■ Although mootness is not an absolute bar to adjudication on appeal, *see Moody v. Cunningham*, 127 N.H. 550, 553, 503 A.2d 819, 821 (1986), this case does not present the usual considerations for reaching the merits in such circumstances. There are, for example, no apparent collateral consequences that would entitle a plaintiff to press on with an arguably moot appeal. *See School District #42 v. Murray*, 128 N.H. 417, 419, 514 A.2d 1269, 1271 (1986). Nor does the plaintiff have any claim to a further day in court on the ground that it was assiduous in seeking a trial court adjudication that would have avoided mootness. *See id.* While we do not approve the delay in these cases, it does not appear from the record that the plaintiff did anything to request action. Nor, finally, does this appeal present issues likely to arise in future cases that will themselves be threatened by mootness. *See Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 675, 394 A.2d 828, 829 (1978).

We are, nonetheless, reluctant to dismiss this appeal without any reference to the merits, because of a concern that it might appear that the court was intentionally avoiding an issue of governmental integrity. We will therefore briefly address the two principal issues that the plaintiff raises, although we believe they are lacking in merit.

The plaintiff argues that it was error to grant summary judgment for the defendants in the second suit because of genuine issues of material fact bearing on the claim that the State had awarded the contract to a late bidder in violation of the bidding specifications. Similarly, the plaintiff argues that it was error to grant summary judgment in each suit because of genuine issues of material fact bearing on the existence of an anti-trust violation under RSA 356:2, II(e). *See* RSA 491:8-a, III. In each instance, then, the question on appeal is whether there is a genuine dispute about a material fact in the case and, if not, whether the moving party is entitled to judgment.

In considering the plaintiff's first claim that the State accepted Granite State's bid in violation of bidding specifications, we will assume *arguendo* that Granite State's representative physically delivered the bid a minute or two after 2 p.m. The plaintiff asserts that the State should not have accepted these bids because Mr. Sweeney could have decided whether to submit Granite State's

lower bid as well as Auclair's higher one after learning the identity of the other bidders. The plaintiff argues that allowing Mr. Sweeney's practice strikes at the integrity of the bidding process and should therefore be forbidden.

█ The facts as alleged, however, do not justify the plaintiff's fear or substantiate its argument. There was no claim or indication in the affidavits filed on summary judgment that Mr. Sweeney learned the identity of the other bidders by sitting quietly until after two o'clock before submitting Granite State's bid. Absent an allegation of such facts, the trial court could not find that Mr. Sweeney had manipulated the bidding process in Mr. Sicotte's favor. Apparently Mr. Sweeney did know that the plaintiff was a bidder, but he knew that from the presence of the plaintiff's president in the room before Mr. Gardner announced at two o'clock that he had two bids. Therefore, there is no factual claim to support the suggestion that Granite State or its owner obtained an advantage by Mr. Sweeney's action. The lack of such factual claim, or dispute about it, leaves a trier of fact with no basis for finding on the facts of this case that acceptance of the late bid posed a threat to the bidding process or was an unreasonable exercise of the State's reserved authority to waive informality in a bid.

█ The issues raised by the anti-trust claim are equally free of any genuine factual dispute relevant to the trial court's disposition of the cases. In each suit, the plaintiff predicated its claim for relief upon the existence of a combination or conspiracy between Auclair and Granite State, with the purpose or effect of submitting "sham or complementary bids," in violation of RSA 356:2, II(e). Consequently, the threshold question in each case was whether two corporations wholly owned by a common owner could combine or conspire within the meaning of the statute. In answering this question we are authorized by the statute itself to "be guided by interpretations· of the United States' antitrust laws." RSA 356:14. Relevant federal case law clearly indicates that two corporations related as Auclair and Granite State are cannot combine or conspire in violation of a statute like RSA 356:2, II(e).

The federal analogue of section 2 of the New Hampshire statute is section 1 of the Sherman Act. 15 U.S.C.A. § 1 (1973). In construing the latter provision, the United States Supreme Court has held that the coordinated activity of a parent corporation and its wholly owned subsidiary cannot be a violation of the prohibition on combinations or conspiracies in restraint of trade or commerce. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). The Court has reasoned that complete unity of interest between the two

corporations precludes any finding that an agreement between them resulted in the joinder of two independent economic entities, which a section 1 violation requires. *Id.* at 771. The purpose of a subsidiary, rather, is so obviously to act for the benefit of its parent, that the notion of an "agreement" between them is meaningless in the context of the Sherman Act. *Id.*

We are persuaded by the Fifth Circuit's reasoning in *Century Oil Tool, Inc. v. Production Specialties, Inc.*, 737 F.2d 1316 (5th Cir. 1984), that *Copperweld's* logic applies equally well to the relation between two corporations wholly owned by the same parent or shareholder.

> "Given *Copperweld*, we see no relevant difference between a corporation wholly owned by another corporation, two corporations wholly owned by a third corporation or two corporations wholly owned by three persons who together manage all affairs of the two corporations. A contract between them does not join formerly distinct economic units."

*Id.* at 1317; *see Hood v. Tenneco Texas Life Ins. Co.*, 739 F.2d 1012, 1015 (5th Cir. 1984) (on *Copperweld* analysis, two wholly owned subsidiaries share a common purpose with each other and therefore cannot combine or conspire for purposes of section 1 of Sherman Act).

The reasoning of these cases disposes of the anti-trust claims under RSA 356:2. The plaintiff's own pleadings allege that Auclair and Granite State are wholly owned, ultimately, by Mr. Sicotte. The economic object of each corporation is therefore to serve Mr. Sicotte's interests, and, under *Copperweld*, the unity of their purposes bars any finding of an illegal combination or conspiracy under RSA 356:2. On the undisputed facts, therefore, the summary judgment for the defendants was warranted.

*Affirmed.*

BATCHELDER and SOUTER, JJ., did not sit; BEAN and CONTAS, JJ., superior court justices, sat by special assignment pursuant to RSA 490:3.