**Paolo GUCCI, Plaintiff,**

v.

**GUCCI SHOPS, INC., Guccio Gucci, S.p.A., Maurizio Gucci and Domenico De Sole, Defendants.**

**No. 86 Civ. 6374 (WCC).**
**Related to 83 Civ. 4453 (WCC).**

United States District Court,
S.D. New York.

Dec. 22, 1986.

Speiser & Krause, P.C., and Blum, Kaplan, Friedman, Silberman & Beran, New York City, for plaintiff; Joseph A. McManus and Randy Lipsitz, of counsel.

Patton, Boggs & Blow, Washington, D.C., and Gold, Farrell & Marks, New York City, for defendants; Allen A. Tuttle, Washington, D.C., and Paul Licalsi, New York City, of counsel.

**WILLIAM C. CONNER, District Judge:**

Defendants Gucci Shops, Inc., Guccio Gucci S.p.A., Maurizio Gucci and Domenico De Sole have moved for an order (1) dismissing this action pursuant to rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim; (2) declaring that the allegations set forth in the complaint in this action do not state an affirmative defense to the counterclaims of defendant Gucci Shops, Inc. in *Paolo Gucci v. Gucci Shops, Inc.*, 83 Civ. 4453 (WCC), pending before this Court; and (3) awarding defendants their costs and attorney's fees incurred in bringing this motion.

### Background

For purposes of the motion to dismiss, the allegations of the Complaint, which are set forth below, must be accepted as true. Plaintiff Paolo Gucci is a citizen of Haiti. He was employed by defendant Guccio Gucci from 1952 through 1978. He was later employed by defendant Gucci Shops from 1978 until 1980, when he was fired. While employed by Guccio Gucci, plaintiff designed various Gucci products. After his termination by Gucci Shops in 1980, plaintiff embarked on a career as an independent designer of consumer products. Plaintiff has identified the products of his design with his name and trademark "PAOLO GUCCI." Plaintiff has been seeking

licensees, manufacturers and distributors for products and services of his design. During 1983 and 1984, he obtained commitments from various manufacturers and distributors to GUCCI. However, according to his Complaint, plaintiff has been prevented from realizing his commercial objectives as a result of actions by the defendants.

Defendant Guccio Gucci is an Italian corporation that began doing business in the early 1900s. Guccio Gucci manufactures leather goods and other consumer products, all of which bear the name and trademark "GUCCI." Defendant Gucci Shops is a New York corporation, which was incorporated in 1953, and has been selling and distributing "GUCCI" products in the United States since 1953. Gucci Shops is the owner of several United States trademark registrations for the name and trademark "GUCCI".

Defendant Maurizio Gucci is the President and a director of defendant Guccio Gucci. He has been President and a member of the board of Guccio Gucci since 1984. In addition, Maurizio Gucci is the Chairman of the Board of Gucci Shops. Furthermore, Maurizio Gucci is the actual or beneficial owner of 50% of the shares of both Guccio Gucci and Gucci Shops and effectively controls the business activities of both companies.

Defendant Domenico De Sole is the President and a director of Gucci Shops. In addition, he is the personal attorney of Maurizio Gucci and a member of the law firm Patton, Boggs & Blow which has represented both Guccio Gucci and Gucci Shops in various matters in the United States.

The gravamen of plaintiff's Complaint is that defendants Guccio Gucci and Gucci Shops, and their officers Maurizio Gucci and Domenico De Sole, engaged in a "combination and conspiracy" in violation of the federal antitrust laws to prevent plaintiff from using his name "PAOLO GUCCI" in any commercial endeavor which might compete with the business of Gucci Shops, involving related or even non-related prod-

ucts and services. Specifically, plaintiff's assert the defendants Maurizio Gucci and Domenico De Sole, "jointly and on behalf of Guccio Gucci and Gucci Shops, directed Patton, Boggs & Blow to write letters to all manufacturers, distributors and licensees of plaintiff demanding that they cease doing business with plaintiff under threat of trademark infringement litigation."

### Discussion

In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), the Supreme Court held that the coordinated acts of a parent and its wholly owned subsidiary cannot, in the legal sense contemplated by section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), constitute a combination or conspiracy. In *Copperweld*, the plaintiff, David Grohne, had formed a new corporation, Independence Tube Company, to compete in the steel tubing market with Regal Tube Company, a wholly owned subsidiary of Copperweld Corporation. Evidently concerned about this new competitor, Copperweld and Regal Tube took a number of steps to discourage those contemplating doing business with Independence Tube. As an example, they sent a letter to parties with whom Grohne was attempting to deal, warning of their intent to protect their rights under the terms of their purchase agreement and to protect the trade secrets they had purchased from Lear Siegler. After receiving this letter, Yoder Company cancelled a contract with Grohne under which the former was to supply a tubing mill. The plaintiff alleged an unlawful conspiracy between Copperweld Corporation and Regal Tube, a wholly-owned but separately incorporated subsidiary. In support of its claim, the plaintiff relied on the so-called "intraenterprise conspiracy doctrine," which holds that affiliated business entities are capable of conspiring with each other if they are separately incorporated.

The Supreme Court rejected the "intraenterprise conspiracy" doctrine because it "looks to the form of an enterprise's structure and ignores the reality." *Id.* 104 S.Ct. at 2743. The Court reasoned that the participants in an intraenterprise agreement have a "complete unity of interest" and "their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." *Id.* at 2742. The Court concluded that when a parent corporation and its wholly-owned subsidiary agree upon a course of action, there is no violation of section 1 of the Sherman Act since "there is no sudden joining of economic resources that had previously served different interests." *Id.* See also Areeda, "Intraenterprise Conspiracy In Decline," 97 Harv.L.Rev. 451 (1983); VII P. Areeda, Antitrust Law, Chapter 14E.

While the immediate issue before the Supreme Court in *Copperweld* was whether a parent could conspire with its wholly-owned subsidiary, the Court explained the rationale for its decision in the following passage:

> If a parent and a wholly-owned subsidiary do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for § 1 scrutiny.
>
> Indeed, the very notion of an "agreement" in Sherman Act terms between a parent and a wholly-owned subsidiary lacks meaning. A § 1 agreement may be found when "the conspirators had a unity of purpose or a common design and understanding, or meeting of minds in an unlawful arrangement." *American Tobacco Company v. United States*, 328 U.S. 781, 810 [66 S.Ct. 1125, 1139, 90 L.Ed. 1575] (1946). But in reality a parent and a wholly-owned subsidiary always have a "unity of purpose or a common design." *Id.*

This reasoning employed by the Supreme Court in *Copperweld* applies with equal force to sister corporations as well as to commonly-owned corporations, as has been recognized by both courts and commentators.

In *Hood v. Tenneco Texas Life Ins. Co.*, 739 F.2d 1012 (5th Cir.1984), the *Copper*-

*weld* doctrine was applied to an alleged conspiracy between two corporations, Southwestern Life and Southwestern Management, each of which was a wholly-owned subsidiary of Tenneco. Mr. Hood's claim of a section 1 violation arose from the termination of his contract as an agent, a decision that he alleged was made jointly by Southwestern Life and Southwestern Management. The Court held that *"Copperweld* teaches us that because (the two subsidiaries) share a common purpose with Tenneco they cannot conspire with their parent in violation of the Sherman Act. By the same token, neither can they conspire with one another." *Id.* at 1015.*

This same reasoning has been applied to corporations under common ownership: In *Century Oil Tool, Inc. v. Production Specialties, Inc.,* 737 F.2d 1316 (5th Cir.1984), the Fifth Circuit held that separate corporations commonly owned by three men, two of whom owned 30 percent of each corporation and one of whom owned the remaining 40 percent of each corporation, were incapable of conspiring with each other in violation of the antitrust laws. The court noted that

> given *Copperweld,* we see no relevant difference between a corporation wholly owned by another corporation, two corporations wholly owned by a third corporation or two corporations wholly owned by three persons who together manage all affairs of the two corporations. A contract between them does not join formerly distinct economic units. In reality, they have always had "a unity of purpose or a common design." *Id.* 737 F.2d at 1317, *citing Copperweld,* 467 U.S. at 758, 104 S.Ct. at 2742, *quoting American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1948).

■ The same can be said of the defendant corporations in this action. The Com-

plaint in this case alleges that Guccio Gucci and Gucci Shops are under common ownership, that all of the shareholders of Guccio Gucci are beneficial owners of all of the shares of Gucci Shops, and that Maurizio Gucci effectively controls the business of both companies. Accepting these allegations as true for purposes of this motion to dismiss, Guccio Gucci and Gucci Shops are, in light of Copperweld and its progeny, incapable of conspiring with each other as a matter of law.

With regard to defendants Maurizio Gucci and Domenico De Sole, it is well-settled that a corporation's employees cannot conspire with their employer under section 1 of the Sherman Act. As the Second Circuit has held, "collaborative action between a corporation and its employees, or among employees within a corporation, is not regarded as joint action within the meaning of § 1." *Schwimmer v. Sony Corp. of America,* 677 F.2d 946, 953 (2d Cir.1982). *See also University Life Insurance Co. v. Unimarc Ltd.,* 699 F.2d 846, 852 (7th Cir. 1983); *Tose v. First Pa. Bank, N.A.,* 648 F.2d 879, 893–94 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911 (5th Cir.1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); Areeda, "Intraenterprise Conspiracy In Decline," at 451 ("there is universal agreement that antitrust law respects the legal and economic unity of the single business corporation and that relations among its managers, employees, or divisions cannot constitute a 'contract, combination ... or conspiracy' under section 1 of the Sherman Act.").

The Supreme Court confirmed this principle in *Copperweld:*

> [I]t is perfectly plain that an internal "agreement" to implement a single unitary firm's policies does not raise the

---

* According to Professor Areeda, all of the reasoning of the Court ... equates sister corporations with subsidiaries. The total unity of the corporate enterprise is equally reflected in both. In refusing to make corporate form determinative and in refusing to treat wholly-owned corpora-

tions differently from unincorporated divisions, the *Copperweld* holding also denies conspiratorial capacity to sister corporations' dealings with each other. VII P. Areeda, Antitrust Law § 1464f (1986).

antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals. Coordination within a firm is as likely to result from an effort to compete as from an effort to stifle competition. In the marketplace, such coordination may be necessary if a business enterprise is to compete effectively. For these reasons, officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy. 104 S.Ct. at 2741.

While the discussion in *Copperweld* was limited to employees within a single firm, the reasoning employed there applies equally to officers of two separate corporations with identical owners. Just as a parent and its wholly owned subsidiary have common objectives, so too a group of corporations with identical owners are guided by a single consciousness—their objectives are common, not distinct. The officers of the firms "are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals." *Id.* According to plaintiff's own allegations, Domenico De Sole is the president and a director of Gucci Shops, and Maurizio Gucci is the president and a director of Guccio Gucci and also the chairman and a director of Gucci Shops. Furthermore, Maurizio Gucci is the actual or beneficial owner of 50% of the shares of both Guccio Gucci and Gucci Shops and effectively controls the business activities of both companies. As officers and directors of the defendant corporations which have identical owners, Domenico De Sole and Maurizio Gucci are, by definition, legally incapable of conspiring with Gucci Shops and Guccio Gucci.

For the reasons outlined above, defendants' motion for an order dismissing this action pursuant to rule 12(b)(6) is granted. Further, pursuant to a stipulation entered into by both parties asking that the Court extend its ruling in this motion to a related action between these parties (*Paolo Gucci v. Gucci Shops, Inc.*, 83 Civ. 4453 (WCC)), the Court rules that the allegations set forth in the complaint in this action do not state an affirmative defense to the counterclaims of defendant Gucci Shops, Inc. in the related case between these parties. Accordingly, plaintiff's request to amend its reply in the related action to include the section 1 claim is denied.

Finally, defendant has moved for an award of attorney's fees. While it is true that this Court has the discretion to award a prevailing defendant attorney's fees in an action that is "unreasonable, frivolous, meritless or vexatious," *Alyeska Pipeline Services Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), I decline to do so here since this action has been disposed of at this early stage and there is no indication that the plaintiff or his attorney acted in bad faith.

So Ordered.