**David COHEN, Plaintiff,**

v.

**PRIMERICA CORP., et al., Defendants.**

**No. CV 88–3331.**

United States District Court,
E.D. New York.

March 29, 1989.

Martin, Van De Walle, Guarino, & Donohue by Joseph A. Guarino, Great Neck, N.Y., for plaintiff.

Dewey, Ballantine, Bushby, Palmer & Wood by J. Paul McGrath, New York City, for defendants.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

The present antitrust action arises out of the termination of plaintiff's agency with defendant-National Benefit Life Insurance Company ("National Benefit"). Plaintiff claims that defendants violated sections 1 and 2 of the Sherman Act and section 7 of the Clayton Act. Moreover, plaintiff asserts a breach of contract claim and a violation of New York General Business Law § 340 ("Donnelly Act"). Jurisdiction is asserted under 28 U.S.C. § 1331 and the doctrine of pendent jurisdiction.

Pursuant to Fed.R.Civ.P. 12(b)(6), defendants move to dismiss all claims. By order dated January 20, 1989, the Court converted this motion to one for summary judgment, and granted the parties leave to sub-

mit additional papers. *See* Fed.R.Civ.P. 12(b).

## FACTS

In 1982 National Benefit appointed plaintiff as a general agent to place New York disability insurance policies. Plaintiff alleges (defendants do not contest this allegation) that National Benefit ended his agency because he had been appointed to the Board of Directors of another disability insurance company. In fact, by letter dated January 5, 1988 National Benefit stated that "if a General Agent whose primary business is in one line of insurance ... becomes a director of a competing company, a conflict of interest arises." Due to this conflict, the letter concludes, plaintiff's agency is terminated.

In Count One of the amended complaint, plaintiff claims that the termination of his agency restrains trade in the disability insurance field. Plaintiff further alleges that by "jointly agreeing to abide by their concerted determination to terminate plaintiff's general agency," defendants established a "combination, contract, agreement and conspiracy" in violation of section 1 of the Sherman Act. *See* Amended Complaint ¶ 28.

In Count Two, plaintiff contends that defendants possess the market power in the New York disability insurance field to "eliminate, reduce, prevent and exclude competition among insurance companies and agencies dealing in the field of disability insurance." Amended Complaint ¶ 32. It is apparently plaintiff's contention that defendants' termination of his agency creates either an unlawful monopolization claim or an attempt to monopolize cause of action. Plaintiff asserts this claim under both section 7 of the Clayton Act and section 2 of the Sherman Act.

In Count Three, plaintiff alleges violations of New York's General Business Law § 340 ("Donnelly Act"). Finally, in Count Four of the amended complaint, plaintiff contends that National Benefit breached its contractual obligations.

The antitrust laws, *inter alia,* protect consumers from monopoly pricing and pre-vent the illicit accumulation of monopoly power. *National Society of Professional Engineers v. U.S.,* 435 U.S. 679, 695, 98 S.Ct. 1355, 1367, 55 L.Ed.2d 637 (1978); *Reiter v. Sonotone Corp.,* 442 U.S. 330, 342, 99 S.Ct. 2326, 2332, 60 L.Ed.2d 931 (1979). At the outset it is hard to fathom how the termination of one insurance agent in an industry as apparently vast as the New York disability insurance market constitutes an antitrust claim. Nevertheless, in the amended complaint, plaintiff alleges violations of certain sections of antitrust law which the Court is obligated to address.

## SUMMARY JUDGMENT

A court may grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987). The burden of proving that no material facts are in dispute falls upon the moving party and the Court must resolve all ambiguities and draw all reasonable inferences against that party. *Donahue,* 834 F.2d at 57. Although the summary judgment motion allows a court to dispose of meritless claims without the need for a costly trial, the procedure must be "used selectively to avoid trial by affidavit." *Id.* With these principles in mind, the Court turns to defendants' motion.

## SHERMAN ACT § 1

■ In Count One of the amended complaint, plaintiff alleges that the defendant-corporations (Primerica, Associated Madison, AC Insurance, and National Benefit) and three of their officers violated section 1 of the Sherman Act by conspiring to terminate plaintiff's agency with National Benefit. However, the defendant-corporations are not separate entities. Primerica owns 100% of Associated Madison, Associated Madison owns 100% of AC Insurance, and AC Insurance owns 100% of National

Benefit. *See* Plaintiff's Amended Complaint at ¶¶ 15–17. Thus, none of the corporations exist independently but are part of a wholly-owned subsidiary chain of Primerica.

■ *Concerted action* in restraint of trade violates section 1 of the Sherman Act. *See Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775, *reh'g denied*, 466 U.S. 994, 104 S.Ct. 2378, 80 L.Ed.2d 850 (1984). However, unilateral action by one single entity does not constitute concerted activity, and therefore does not violate section 1 of the Sherman Act. *Monsanto, supra.* Thus, in a section 1 claim, the distinction between what is concerted action as contrasted with unilateral, independent conduct is fundamental in deciding whether a cause of action exists.

In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777, 104 S.Ct. 2731, 2744, 81 L.Ed.2d 628 (1984), the Supreme Court held that the acts of a parent corporation, its wholly owned subsidiary and the officers and directors of either company do not fall within the ambit of section 1 of the Sherman Act. The Court stated that Sherman Act § 1 prohibits separate and competing companies from conspiring to restrain trade, but does not apply to "the coordinated activity of a parent and its wholly owned subsidiary." *Copperweld*, at 771, 104 S.Ct. at 2741.

Although the Supreme Court did not discuss specifically whether the acts of *sister* corporations (subsidiaries of one parent corporation) constitute concerted activity, the same rationale should apply. If a wholly owned subsidiary is not independent of its parent corporation, then wholly owned subsidiaries of one parent corporation are not independent of each other. Although the Court of Appeals for the Second Circuit has not addressed this issue, other circuit courts have extended the *Copperweld* holding and concluded that section 1 of the Sherman Act does not prohibit the concerted actions of sister corporations. *See Directory Sales Management Corp. v. Ohio Bell Telephone Co.*, 833 F.2d 606, 611 (6th Cir.1987); *Hood v. Tenneco Texas Life Ins.*

*Co.*, 739 F.2d 1012, 1015 (5th Cir.1984); *Century Oil Tool, Inc. v. Production Specialties, Inc.*, 737 F.2d 1316, 1317 (5th Cir. 1984). *See also Gucci v. Gucci Shops, Inc.*, 651 F.Supp. 194 (S.D.N.Y.1986).

Since defendants Associated Madison, AC Insurance, and National Benefit are wholly owned subsidiaries of defendant Primerica, plaintiff's claim fails to establish a cause of action under § 1 of the Sherman Act.

## CLAYTON ACT § 7

In Count Two, plaintiff alleges violations of section 7 of the Clayton Act. However, section 7 deals exclusively with mergers and acquisitions. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 311, 82 S.Ct. 1502, 1516, 8 L.Ed.2d 510 (1962). Since this case does not involve an acquisition, plaintiff's reliance on the Clayton Act is misplaced.

## SECTION 2 OF THE SHERMAN ACT

■ In Count Two of the amended complaint, plaintiff contends that the termination of his agency establishes either an unlawful monopolization claim or an attempt to monopolize cause of action. *See* Sherman Act § 2.

The Supreme Court defines "unlawful monopolization" as including two elements:

(1) the possession of monopoly power in the relevant market; and

(2) the willful acquisition or maintenance of that power as distinguished from normal growth as a consequence of a superior product, business accumen, or historic accident.

*United States v. Grinnell Corp.*, 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1703–1704, 16 L.Ed.2d 778 (1966).

■ The essential elements of an attempted monopolization claim are (1) a dangerous possibility of success in monopolizing a given market; and (2) a specific intent to destroy competition or build monopoly. *Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 626, 73 S.Ct. 872, 889, 97 L.Ed. 1277 (1953); *Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co.*, 614 F.2d 832, 841 (1980).

*As a starting point* in determining a monopolization or attempt to monopolize claim, courts look to market share. *See United States Aluminum Co. of America,* 148 F.2d 416 (2d Cir.1945).

When examining market share, a court must first determine the parameters of the relevant market, and then examine the defendant's share in that market. *United States v. Grinnell Corp., supra; Nifty Foods, supra.*

Even though plaintiff asserts the monopolization claims against all the defendants, both sides confine their analysis to National Benefit. This is hardly surprising. As already discussed, the defendant corporations are part of a wholly owned subsidiary chain of Primerica. In fact, only National Benefit is engaged in the business of underwriting insurance in the State of New York. *See* Plaintiff's Complaint at ¶¶ 15–17.

Both sides concur that the New York disability insurance market is the relevant market.

In arguing that National Benefit possesses monopoly power, plaintiff claims that the proper statistics for determining market share are the amount of annual premiums earned, and concludes that National Benefit possesses 19% of the disability insurance market:

| Writer | Premiums | Market Share |
|---|---|---|
| Hartford Ins. | $38,000,000 | 22% |
| Zurich Ins. | $38,000,000 | 22% |
| National Benefit | $32,000,000 | 19% |
| CNA | $16,000,000 | 9% |
| Arista Ins. | $15,000,000 | 9% |
| Standard Security | $12,000,000 | 7% |
| First Rehab. | $10,000,000 | 7% |
| Amer. Accident | $ 5,000,000 | 3% |
| Amer. Medical | $ 3,000,000 | 2% |

*See* Cohen Affidavit, dated February 3, 1989 at ¶ 4.

In fact, plaintiff's figures are incomplete. Plaintiff admits that the above chart of annual earned premiums does not include all of the companies involved in the New York disability insurance industry, but only the largest members of that market. *See* Cohen Affidavit, dated February 3, 1989 at

¶ 4. Therefore, National Benefit's market share is somewhat below 19%.

Normally, in an antitrust action involving a monopolization claim, both sides vigorously contest the proper method for computing market share. However, *for purposes of this motion,* defendants do not dispute plaintiff's method, and even concede plaintiff's 19% figure.[1] *See* Defendants' Reply Brief, dated February 16, 1989 at pp. 2, 4. As defendants correctly point out, a 19% market share, as a matter of law, is insufficient to support a monopolization claim.

In the seminal case in the field, Judge Learned Hand stated that while a 90% market share "is enough to constitute a monopoly; it is doubtful whether sixty or sixty-four percent would be enough; and certainly thirty-three percent is not." *United States v. Aluminum Co. of America,* 148 F.2d at 424. The law in the Second Circuit is clear that a 19% market share cannot sustain a monpolization or attempt to monopolize claim. *Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co.,* 614 F.2d 832, 841 (2d Cir.1980); *Levitch v. Columbia Broadcasting System, Inc.,* 495 F.Supp. 649, 655 (S.D.N.Y.1980), *aff'd,* 697 F.2d 495 (2d Cir.1983) (alleged market share of 33% insufficient to support a monopolization claim under § 2 of the Sherman Act); *Giant Paper & Film Corp. v. Albermarle Paper Co.,* 430 F.Supp. 981 (S.D.N.Y.1977). *See also Barry v. Blue Cross of California,* 805 F.2d 866 (9th Cir. 1986); *C.E. Services, Inc. v. Control Data Corp.,* 759 F.2d 1241 (5th Cir.1985); *Pennsylvania Dental Ass'n v. Medical Serv. Ass'n,* 745 F.2d 248 (3d Cir.1984).

Plaintiff's own figures indicate at most a 19% share of the New York State disability insurance market. Therefore, as a matter of law plaintiff's monopolization and attempt to monopolize claims fail.

### PENDENT STATE CLAIMS

■ Since plaintiff's federal antitrust allegations fail to establish a cause of action, plaintiff's pendent state claims (Donnelly

---

**1.** Defendants submitted an alternative method for computing market share which indicates that National Benefit's percentage of the market ranges from 6.8% to 15%. *See* Wyse Affidavit dated February 3, 1989.

Act violation and breach of contract) lack an independent basis to support the use of a federal forum. When the principal claim providing federal jurisdiction is dismissed before trial, the pendent state claims should similarly be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Nolan v. Meyer*, 520 F.2d 1276 (2d Cir.), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176 (2d Cir.1974).

Accordingly, pursuant to Fed.R.Civ.P. 12(b)(1), the Court dismisses plaintiff's state claims for lack of subject matter jurisdiction.

## CONCLUSION

Defendants' motion for summary judgment on plaintiff's antitrust claims is granted. The Court dismisses plaintiff's state claims for lack of subject matter jurisdiction. The Clerk of the Court is directed to enter judgment in favor of defendants.

SO ORDERED.