Heritage Home Hlth v. Cap. Reg. Hlth   CV-95-558-JD   10/01/96

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Heritage Home Health, Inc.

    v.                                    Civil No. 95-558-JD

Capital Region Health Care
Corp., et al.

O R D E R

The plaintiff, Heritage Home Health, Inc. ("Heritage")
brought this action against the defendants, Capital Region Health
Care Corp. ("Capital Region"); two of Capital Region's wholly
owned subsidiaries, Concord Hospital and Concord Regional
Visiting Nurses Association ("VNA"); and David Worster and Mary
Limoges, respectively, the current and former Director of Social
Services at Concord Hospital, alleging anticompetitive conduct
under various state and federal law theories.  Before the court
are the defendants' motion for summary judgment on count III of
the plaintiff's amended complaint (document no. 17) and the
defendants' motions to dismiss counts IV and V (documents nos. 21
& 18).


Background[1]

Heritage is a New Hampshire corporation licensed by the
state to provide nursing services to patients in their homes and

_____

[1]The facts relevant to the instant motions either have been
alleged by the plaintiff or are not in dispute.

as a hospice to provide services to terminally ill patients. According to Heritage, consumers for home health services generally are either patients who have been discharged from hospitals and require follow-up care, or are patients who have received referrals from physicians or social workers acting in their capacity as hospital employees. Heritage actively and aggressively solicits referrals from hospitals throughout New Hampshire, including defendant Concord Hospital, which serves and, according to Heritage, "enjoys a virtual monopoly over the provision of acute and emergency care services in," central New Hampshire. Amended Complaint ¶ 28.

The defendant VNA is a not-for-profit corporation also providing home health services to patients. The VNA and Concord Hospital, both wholly owned subsidiaries of Capital Region, claim the same Concord address as their principal place of business. The defendants employ a "nurse liaison" who works at Concord Hospital and visits patients in need of home health care services, including those who may already have entered into contractual relationships with home health care providers, and refers the patients exclusively to the VNA for home health care services. The nurse liaison does not inform patients that the VNA is owned by the same corporation that owns the hospital, and the defendants have made no disclosures to the state division of

2

public health services concerning either Capital Region's ownership of the VNA or the nature of the referral process at Concord Hospital. Heritage does not have access to the medical records of patients who receive care at Concord Hospital.

The plaintiff commenced this action on November 17, 1995, filed an amended complaint on December 20, 1995, and moved to withdraw count I of its amended complaint on May 17, 1996. Thus, it currently alleges that the defendants (1) have attempted to monopolize and have monopolized the home health care market in central New Hampshire by committing various anticompetitive acts in violation of section 2 of the Sherman Act, 15 U.S.C. § 2 (count II); have prevented home health care providers other than the VNA from gaining access to patients at Concord Hospital in violation of the New Hampshire Combinations and Monopolies Act, N.H. Rev. Stat. Ann. ("RSA") § 356 (count III); (3) tortiously interfered with the plaintiff's contractual and prospective contractual relations (count IV); and (4) failed to disclose their ownership interests in the VNA to patients at Concord Hospital and to the state division of public health services in violation of 42 U.S.C. §§ 1395a, 1395nn and RSA §§ 125:25-b, 125:25-c (count V).

Discussion

I. <u>Defendants' Motion for Summary Judgment</u>

The defendants argue that summary judgment is warranted on the claims asserted in count III that are based on RSA § 356:2[2] because the defendants -- a parent company, two of its wholly owned subsidiaries, and two individuals acting in their roles as employees of one of the subsidiaries -- legally are incapable of contracting, combining, or conspiring in restraint of trade within the meaning of the statute.

The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" <u>Mesnick v. General Elec.</u>

_____

[2]The defendants have not moved for summary judgment on the count III claims that allege violations of RSA § 356:3.

4

Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 504 U.S. 985 (1992).  However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

RSA § 356:2 prohibits contracts, combinations, and conspiracies that restrain trade or have various anticompetitive purposes or effects.  RSA § 356:2 (1995).  Courts interpreting the provision specifically are authorized to use the antitrust laws of the United States as a guide.  Id. § 356:13.  Given the unity of interest between and among a corporation and its subsidiaries, neither the coordinated activity of the corporation and its subsidiaries nor the coordinated activity of the subsidiaries can constitute a violation of the statute.  Kenneth E. Curran, Inc. v. Auclair Transp., Inc., 128 N.H. 743, 748-49, 519 A.2d 280, 284 (1986) (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984); Century Oil Tool, Inc. v. Production Specialties, Inc., 737 F.2d 1316, 1317 (5th Cir. 1984)).  Although the New Hampshire Supreme Court has not addressed the question of whether the joint conduct of a

5

corporation and its employees can constitute a violation of the statute, federal courts construing the federal analog of RSA § 356:2, section 1 of the Sherman Act, 15 U.S.C. § 1, have held that, absent proof of divergent interests between a corporation and its employees, the Copperweld doctrine precludes an action based on such conduct. See, e.g., Okusami v. Psychiatric Inst., 959 F.2d 1062, 1065 (D.C. Cir. 1992); Odishelidze v. Aetna Life & Casualty Co., 853 F.2d 21, 23 (1st Cir. 1988). In light of the statute's instruction that courts look to federal antitrust law for guidance, the New Hampshire Supreme Court's acceptance of the Copperweld doctrine, and the absence of any allegations of divergent interests among the defendants, the court finds that the plaintiff has failed to demonstrate that the defendants were legally capable of forming a contract, combination, or conspiracy in violation of RSA § 356:2.

Accordingly, the court grants summary judgment to the defendants on the plaintiff's count III claims alleging violations of RSA § 356:2.

II. Defendants' Motions Under Rule 12

The defendants have moved to dismiss counts IV and V of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

6

However, because the defendants already have filed an answer to the plaintiffs' complaint, the pleadings have closed under Fed. R. Civ. P. 7(a). As such, the court will treat the defendants' motions to dismiss counts IV and V as motions for judgment on the pleadings. See Fed. R. Civ. P. 12(c).

A motion for judgment on the pleadings will be granted if, accepting all of the plaintiff's factual averments contained in the complaint as true, and drawing every reasonable inference helpful to the plaintiff's cause, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988). The court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)). In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiff. Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (Rule 12(b)(6) motion); Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c) motion).

7

A.    Count IV: Tortious Interference with Contractual and Prospective Contractual Relations

The defendants argue that the plaintiff has failed to state a claim for tortious interference with contractual and prospective contractual relations because the plaintiff has failed to identify any contracts between itself and patients that existed or were likely to exist with which the defendants interfered.  They further contend that any interference with the plaintiff's contracts or prospective contracts was not, as a matter of law, improper.

New Hampshire recognizes the torts of intentional interference with contractual relations, see, e.g., Montrone v. Maxfield, 122 N.H. 724, 726, 449 A.2d 1216, 1217 (1982) (citing Restatement (Second) of Torts § 766 (1979)),[3] and intentional interference with prospective contractual relations, see, e.g., Baker v. Dennis Brown Realty, Inc., 121 N.H. 640, 644, 433 A.2d 1271, 1273-74 (1981) (citing Restatement (Second) of Torts § 766B

---

[3]Section 766 of the Restatement provides:

**Intentional Interference with Performance of Contract by Third Person**
One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

8

(1979)).[4] The contract or prospective contract need not be reduced or expected to be reduced to a formal, written instrument. Instead, all that is required is a promise, or the reasonable expectation of a promise, creating a duty recognized by law. Restatement (Second) of Torts § 766 cmt. f (1979); id. § 766B cmt. c; see Fineman v. Armstrong World Indus., 774 F. Supp, 225, 233-34 (D.N.J. 1991) (interpreting Restatement § 766B), rev'd on other grounds, 980 F.2d 171 (3d Cir. 1992), cert. denied, 507 U.S. 921 (1993).

Here, the plaintiff has alleged that patients with whom it had established some form of business relationship "were, upon discharge [from Concord Hospital], intentionally diverted to VNA for their home health care needs," and that the defendants knew of the patients' relationships with the plaintiff. See Amended

_____

[4]Section 766B of the Restatement provides:

**Intentional Interference with Prospective Contractual Relation**
One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

     (a) inducing or otherwise causing a third person not to enter or continue the prospective relation or

     (b) preventing the other from acquiring or continuing the prospective relation.

9

Complaint ¶¶ 45-47. These allegations provide an adequate factual basis for the plaintiff's claims of tortious interference with contractual relations.

However, to the extent the plaintiff also seeks relief based on its allegation that, given its capabilities, it had and has "prospects of contractual relations with a portion of the market of home health care patients that exists in the central New Hampshire area," id. ¶ 48, it has failed to state a claim. The court has found no authority for the proposition that a plaintiff may bring an action for tortious interference with prospective contractual relations based solely on a plaintiff's potential for capturing a share of a given market. Moreover, to permit such a cause of action to proceed in the absence of any relationship whatsoever between the plaintiff and its potential customers would run afoul of the New Hampshire Supreme Court's statement that "to prove either tortious interference with a prospective agreement or tortious interference with a contractual relationship, the plaintiff must prove . . . that a plaintiff had a contractual relationship with" a third party. Montrone, 122 N.H. at 726, 122 A.2d at 1217. Accordingly, the court finds that the plaintiff has stated a claim for tortious interference with prospective contractual relations only to the extent it seeks relief for the defendants' interference with already existing

10

relationships that give rise to a "reasonable expectation of economic advantage." <u>Fineman</u>, 774 F. Supp at 234.

As to the defendants' claim that its conduct was not, as a matter of law, improper, their argument is without merit. The Restatement provides in pertinent part:

**Competition as Proper or Improper Interference**

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

<u>Restatement (Second) of Torts</u> § 768 (1979). The defendants boldly assert that, based on their motion for summary judgment on count III, the plaintiff cannot show that the defendants' actions were wrongful or that their actions constituted an unlawful restraint of trade. However, as noted <u>supra</u>, the defendants have acknowledged that their motion for summary judgment on count III is directed only at the plaintiff's claims under RSA § 356:2, and does not address the plaintiff's claims under RSA § 356:3, which prohibits "[t]he establishment, maintenance or use of monopoly

11

power, or any attempt to establish, maintain or use monopoly power over trade or commerce for the purpose of affecting competition or controlling, fixing or maintaining prices." In addition, count II of the amended complaint alleges that the defendants violated section 2 of the Sherman Act, which prohibits the monopolization, or attempted monopolization, of any part of interstate commerce. 15 U.S.C.A. § 2 (West Supp. 1996). The plaintiff has pleaded facts sufficient to support its claims that the defendants wrongfully and unlawfully interfered with the defendants' contractual and prospective contractual relations.

The defendants' motion for judgment on the pleadings on count IV is denied to the extent the plainitff seeks relief for the defendants' interference with already existing relationships, and granted to the extent the plaintiff's claim is based on its potential for capturing a share of the home health care market.

### B. Count V: Failure to Disclose Ownership Interests

The defendants argue that dismissal is warranted on the plaintiff's failure to disclose claims under 42 U.S.C. §§ 1395a, 1395nn and RSA §§ 125:25-b, 125:25-c, because none of these statutory provisions confers a private right of action upon health care providers. The court considers these claims seriatim.

12

## 1. 42 U.S.C. §§ 1395a, 1395nn

Despite the plaintiff's contention that "the plain language of 42 U.S.C. [§] 1395 allows this cause of action," Memorandum of Law in Opposition to Motion to Dismiss at 6, the court has found no cases holding that the provisions of the statute under which the plaintiff is proceeding provide a private right of action to health care providers. In fact, both federal courts that have considered the question have concluded that § 1395a does not provide a private right of action to parties other than patients, for whose benefit the statute was enacted.[5] Mays v. Hospital Auth., 582 F. Supp. 425, 430-31 (N.D. Ga. 1984) (no private right of action for physicians); Home Health Care Services, Inc. v. Currie, 531 F. Supp. 476, 478 (D.S.C. 1982) (no private right of action for home health care providers), aff'd, 706 F.2d 497 (1983).[6] In addition, § 1395nn, which prohibits physicians from

_____

[5]The statute provides:

> Any individual entitled to insurance benefits under this subchapter may obtain health services from any institution, agency, or person qualified to participate under this subchapter if such institution, agency, or person undertakes to provide him such services.

42 U.S.C.A. § 1395a (West 1992).

[6]The court pauses to note that its resolution of the instant motion has been hampered by the amoebic nature of the plaintiff's claims. Prior to specifying the provisions of § 1395 under which it is seeking relief, the plaintiff distinguished Mays and Currie

13

making self-interested referrals for services otherwise payable by Medicare, appears not to have been enacted for the special benefit of health care providers seeking referrals, and specifically contemplates that the Secretary of Health and Human Services may initiate a civil action to recover payments made in violation of the statute or to assess civil monetary fines. See 42 U.S.C. § 1395nn(g) (West Supp. 1996); id. § 1320a-7a(c) (West Supp. 1996). These factors evince a lack of congressional intent to confer a private right of action on the plaintiff through § 1395nn. See Cort v. Ash, 422 U.S. 66, 78 (1975). Accordingly, the plaintiff's claims under 42 U.S.C. § 1395 are dismissed.

B. RSA §§ 125:25-b, 125:25-c

Under New Hampshire law, liability may be based on the violation of a statute if the (1) plaintiff is a member of the class protected by the statute; (2) the harm inflicted is the type intended to be protected against; and (3) the legislature expressed an intent, either explicitly or implicitly, that a violation of the statute should give rise to a cause of action.

---

on the ground that they involved provisions that were "entirely different" than those implicated by the instant action. Memorandum of Law in Opposition to Motion to Dismiss at 6. It was only after twice being ordered by the court to specify the provisions under which it was proceeding that the plaintiff made reference to § 1395a, the very provision under which Mays and Currie were decided, and § 1395nn.

14

Marquay v. Eno, 139 N.H. 708, 715, 662 A.2d 272, 277-78 (1995) (quoting Bob Godfrey Pontiac, Inc. v. Roloff, 291 Or. 318, 326, 630 P.2d 840, 844-45 (1981)). After reviewing the language and structure of the disclosure requirements of RSA §§ 125:25-b, 125:25-c,[7] the court finds that no private right of action is available to the plaintiff under either provision. Concerning the first and second prongs of the Marquay test, the court infers from the disclosure requirement set forth in RSA § 125:25-b(III)[8] that the statutory scheme is designed to protect patients from making uninformed decisions, and does not specifically seek to provide another remedy to health care providers claiming to be victims of anticompetitive activity. As

_____

[7]RSA § 125:25-b requires physicians with ownership interests in the entities to which they refer patients to disclose the nature of their interests to their patients. RSA § 125:25-c requires health care practitioners and entities owned by health care practitioners to disclose such interests to the state division of public health services.

[8]The statute requires practitioners having an ownership interest in an entity to which he is referring patients to include the following language conspicuously on the face of a written referral:

> The referring health care practitioner maintains an ownership interest in the facility to which you are being referred. You are not required to utilize the facility to which you are being referred for these services. These services may be available elsewhere in the community. This office will provide an alternate referral upon your request.

RSA § 125:25-b(III).

15

to the third prong, the court notes that neither provision expressly provides a private right of action to a party injured as a result of violations of the statute, and that both provisions contemplate enforcement through disciplinary action against offending practitioners or entities, to be meted out under the direction of the state division of public health services.  See RSA § 125:25-b(VI) (Supp. 1995); id. § 125:25-c(VIII) (Supp. 1995).  Finally, the court notes that the New Hampshire Supreme Court has yet to recognize any private right of action under the statutory scheme, and that, as a general matter, "[e]xpansive reading of New Hampshire statutes and recognition of novel causes of action under those statutes is a practice best left to the New Hampshire Supreme Court."  Kelley v. City of Manchester, No. 94-358-M, slip op. at 17 (D.N.H. Sept. 29, 1995).  Accordingly, the plaintiff's claims under RSA §§ 125:25-b, 125:25-c are dismissed.


## Conclusion

The defendants' motion for summary judgment (document no. 17) is granted as to the claims in count III based on RSA § 356:2.  The defendants' motion for judgment on the pleadings on count IV (document no. 21) is denied to the extent the plainitff seeks relief for the defendants' interference with already

16

existing relationships, and granted to the extent the plaintiff's claim is based on its potential for capturing a share of the home health care market.  The defendants' motion for judgment on the pleadings on count V (document no. 18) is granted.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

October 1, 1996

cc:  Peter G. McGrath, Esquire
     Donald J. Perrault, Esquire